# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

**BELINDA MANN,**

     Plaintiff,

**v.**

                **Case No. 1:22-cv-1246-CLM**

**KOCH FOODS OF ASHLAND LLC,**

     Defendant.

## MEMORANDUM OPINION

Belinda Mann ("Mann") sues Koch Foods of Ashland LLC ("Koch Foods") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), for demoting her because of her race. (Doc. 1). Koch Foods moves for summary judgment. (Doc. 13). For the reasons stated within, the court will **GRANT** Koch Food's Motion.

### BACKGROUND

The background facts are either undisputed or presented in the light most favorable to Mann as the nonmoving party. FED. R. CIV. P. 56; *see, e.g.*, *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung* 695 F.2d 1294, 1296 (11th Cir. 1983) ("All reasonable doubts about the facts should be resolved in favor of the non-movant.").

### A. Mann's Responsibilities

Koch Foods is an integrated poultry processor and manufacturer of food products with a plant located in Ashland, Alabama. Mann, a Black woman, began working for Koch Foods in 2007. (Doc. 15 at ¶¶ 1-4). She was originally hired as a lead person in Koch Food's "second processing department" before transitioning into the supervisor assistant role. (Doc.

15 at ¶¶ 3, 13).[1] Throughout most of Mann's tenure as a supervisor assistant, Mann's aunt, Nell Wallace ("Wallace"), was her supervisor. (Doc. 15 at ¶ 6).

Mann reviewed and signed four Koch Foods' employment agreements at the onset of her employment: (1) Koch Foods' "Lead Person Duties" form on June 26, 2007, which included a non-exhaustive list of duties for the role, (doc. 15 at ¶ 8 (citing doc. 14-1 at 97)); (2) Koch Foods' Rules of Conduct on August 8, 2007, which specifies between Type I and Type II rules,[2] (*see* doc. 15 at ¶¶ 10-11 (citing doc. 14-1 at 100-02)); (3) Koch Foods' supervisor assistant role form on May 25, 2012, which stated "Notice: Failure to meet the expectations of a Supervisor Assistant management support position can result in disqualification." (*see* doc. 15 at ¶¶ 16-19 (citing doc. 14-1 at 98)); and (4) Koch Foods' "Supervisor Assistant Job Description," which Koch Foods utilized to provide a non-exhaustive list of requirements for all supervisor assistants in the second processing department,[3] (doc. 15 at ¶ 16 (citing doc. 14-1 at 99)).

## B. Mann's Record of Discipline

Mann received multiple notices for disciplinary action between 2009 and 2021 arising from these incidents:

- April 2009: Mann screamed at her supervisor, Wallace;
- March 2019: Mann failed to bring her identification badge to work;

---

[1] Koch Foods personnel, including Jonathan "Chip" Mattox, Day Shift Manager, re-interviewed every lead person for the supervisor assistant role in order to ensure supervisor assistants understood their new requirements for the role, which involved complying with requirements outlined in the "General Requirements" and "Rules of Conduct" documents, and in the updated job description. (Doc. 15 at ¶¶ 14-15).

[2] Violating a Type I rule, such as fighting or provoking a fight, is grounds for immediate termination, even on the first offense. (Doc. 14 at ¶ 10 (citing Doc. 14-1 at 100)). Violating a Type II rule, such as uncivil attitudes and loud or offensive language and/or behavior, may subject the violator to a progressive disciplinary scheme or immediate termination. (Doc. 14 at ¶¶ 11-12 (citing Doc. 14-1 at 101)).

[3] Some of the requirements listed in the "Supervisor Assistant Job Description" include:
- o   "Adhere to all plant rules of conduct, policies, and procedures;"
- o    "Lead by example in; Safety, Communications, Attitude, Quality, and Respect;" and
- o   "Maintain professional communication with supervision and coworkers."

(*See* Doc. 14 at ¶¶ 20-26 (citing Doc. 14-1 at 99)).

- June 2020: Mann repeatedly yelled at Amber Sanchez, a general laborer in processing; Mann also confronted Sanchez by waving her finger at Sanchez and standing in front of her;
- April 2021: Mann curses at Sequonte Burdette, an hourly worker.

*See* Doc. 14-1 at 102 (April 2009 incident), 103 (March 2019 incident); 104 (April 2021 incident); 108-13 (June 2020 incident).

## C. Mann's Demotion

This case stems from the last incident—*i.e.*, Mann calling Sequonte Burdette a "punk ass bitch" and "fat motherfucker." (*See* Doc. 14-1 at 107). The day after the incident (April 16, 2021), Jonathan "Chip" Mattox ("Mattox"), Day Shift Manager, and Margaret Benefield ("Benefield"), Ashland Plant Human Resources Manager, met with Mann about the incident. (Doc. 15 at ¶ 56 (citing Doc. 14-1 at 18, Dep. 66:6–11)). They told Mann "that just wasn't the way that a supervisor assistant should act." (Doc. 15 at ¶ 56 (citing Doc. 14-1 at 18, Dep. 66:6–11)). And they removed Mann from her status as supervisor assistant for violating her signed responsibilities, particularly the rule of conduct prohibiting "uncivil attitudes and loud of offensive language and/or behavior." (Doc. 14-1 at 104).

Koch Foods moved Mann into a production position in the marination department, where she currently works. (Doc. 15 at ¶ 58 (citing Doc. 14-2 at ¶ 11; Doc. 14-3 at ¶¶ 19, 21); Doc. 14 at ¶ 83 (citing Doc. 14-1 at 21-22, Dep. 81:22–82:5)). As a manifester, Mann works with labels that go on the product before leaving the plant. (Doc. 15 at ¶ 87 (citing Doc. 14-1 at 22, Dep. 84:11–17)). Mann has not tried to obtain another supervisor assistant or lead position, despite knowing such positions have opened since her demotion, because she "like[s] manifesting" and wants to maintain her role. (Doc. 15 at ¶ 87 (citing Doc. 14-1 at 22-23, Dep. 85:18–86:1, 87:8–11; 88:2–4); Doc. 15 at ¶ 89 (citing Doc. 14-1 at 23, Dep. 87:12–19); Doc. 15 at ¶ 90 (citing Doc. 14-1 at 23, Dep. 87:12–88:4)).

STANDARD OF REVIEW

In reviewing a motion for summary judgment, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But where the evidence is merely colorable or not significantly probative, no genuine dispute of material fact exists, and summary judgment is appropriate. *Id.* at 249-50. Further, if the non-movant responds to the motion for summary judgment with just conclusory allegations, the court must enter summary judgment for the movant. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir. 1989).

DISCUSSION

## I.   Gender Discrimination Claim

To begin, Mann alleged in her complaint that "Koch . . . unlawfully discriminated against Mann by reason of her race ***and gender*** in violation of the Civil Rights Act of 1964." (Doc. 1 at ¶ 32) (emphasis added). But Mann did not exhaust a sex or gender-based claim before the Equal Employer Opportunity Commission ("EEOC"). (*See* Doc. 14-1 at 116–17).[4] Nor did she make an argument about sex or gender discrimination in response to Koch Foods's motion for summary judgment, relying solely on race instead. (Doc. 17). So the court finds that Mann has waived any claim that Koch Foods discriminated against her based on sex or gender. *T.R. by and through Brock v. Lamar County Bd. of Educ.*, 25 F.4th 877, 884-85 (11th Cir. 2022) (because appellant "did not raise this argument before the district court in her brief in opposition to the

---

[4] A Title VII plaintiff must exhaust certain administrative remedies before filing a suit for employment discrimination. Civil Rights Act of 1964, § 706, as amended, 42 U.S.C.A. § 2000e–5. Mann's Charge of Discrimination filed with the Equal Employment Opportunity Commission states, "I believe I was demoted because of my race, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Doc. 14-1 at 117).

4

Defendant's motion for summary judgment . . . she waived this argument below").

## II.   Race Discrimination Claim

The parties present much of their race discrimination arguments under the well-known, three-step *McDonnell Douglas* framework—*i.e.*, plaintiff's prima facie case, defendant's nondiscriminatory reason, and pretext. But recently, the Eleventh Circuit has signaled a departure from *McDonnell Douglas* toward a more basic, Rule 56-based inquiry: Has the Plaintiff submitted enough evidence to allow a reasonable juror to find that the Defendant employer acted against Plaintiff because of her race? *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) ("The legal standard—and the question for the court at summary judgment—is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee"); *Tynes v. Fla. Dep't of Juv. Justice*, Case No. 21-13245, 2023 WL 8593114, at *947 (11th Cir. Dec. 12, 2023) ("This rearticulation of the summary judgment standard arose in large part because of widespread misunderstandings about the limits of *McDonnell Douglas*—the same misunderstandings that persist today. A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit.").

This court will follow suit.

Koch Foods says that the decisionmakers removed Mann from her role as a supervisor assistant because she called Burdette a "punk ass bitch" and "fat motherfucker," action as Koch Foods puts it, was "the very type of behavior she was expected to prevent." (Doc. 19 at 7). Koch Food's Rules of Conduct and contemporaneous disciplinary notice supports this nondiscriminatory reason:



**KOCH FOODS**
*America's Chicken Specialist*

## RULES OF CONDUCT - TYPE II

VIOLATION OF TYPE II RULES GENERALLY WILL FOLLOW PROGRESSIVE <u>DISCIPLINARY</u> <u>STEPS</u> UP TO AND INCLUDING TERMINATION.  In certain cases depending on the severity of the infraction, the Company may not follow the steps as outlined and may proceed to the termination step.

1. Radio Misconduct – No playing or making funny noises, no interference, no pretending to be someone else, no offensive language or remarks such as jokes or graphic verbal commentaries.
2. Work Performance – failure to perform jobs as per Company standards and instructions.
3. Taking more time than allowed for breaks, lunches, restroom breaks.
4. Receiving or making personal phones calls during working hours.
5. Displaying harassing or discriminating behavior.
6. Violation of any other rules, policies, or procedures not listed as a Type I or Type II offense.
7. Failing to complete reasonable instructions.
8. Negligent or unsafe acts, including horseplay or practical jokes, which endanger employees.
9. Negligent or unsafe acts, including horseplay or practical jokes, which cause destruction of Company property.
10. Smoking in any Koch Foods facility or in any area other than designated outside areas.
11. Uncivil attitudes and loud or offensive language and/or behavior.

**Disqualification of Supervisor Assistant Status**

Disciplinary Action (previous 12 months)

| Date | | Type | | Misconduct |
|------|--|------|--|------------|
| Date | | Type | | Misconduct |

**Rules of Conduct Violation**

Rules of conduct Type 2 # 10 ) Uncivil attitudes and loud or offensive language and/or behavior.

Failure to meet the signed responsibilities of a supervisor assistant.
During a confrontation with another team member Belinda exhibited language and behavior explicitly prohibited by a management support team lead position. As outlined in the responsibilities of a supervisor assistant / now team lead these actions are grounds for disqualification.

**Standard Expected**

All team members must follow the plant rules of conduct and the management support Team Lead also comes with additional "lead by example" responsibilities. These are mandatory.

**Consequences - Action Taken**

Belinda is being disqualified from this position effective today, 04/16/2021. HR will determine what available position she can be placed in.

| Refused to sign | 4/16/21 | | |
|-----------------|---------|--|--|
| Employee Signature | Date | Supervisor Signature | Date |

| _signature_ | 4/16/21 | _Margaret Benefield_ | 4/16/21 |
|-------------|---------|----------------------|---------|
| Shift Manager | Date | HR Manager | Date |

6

(Doc. 14-1 at 101, 104).

Mann contends that she can prove race discrimination by showing that Tina Morris, a white supervisor assistant, was not demoted even though she (a) got into a fight with her sister and (b) engaged in a romantic relationship with another employee. (*See* Doc. 17 at ¶ 77). So the court first outlines the parties' evidence about Tina Morris, then determines whether a juror could look at that evidence and reasonably infer racial discrimination.

**A. Mann's evidence**

1. *The fight*: The parties agree that Tina Morris and her sister Gina Morris fought in May 2020, the month after Mann was moved out of her supervisor assistant role. (Doc. 17 at ¶ 99 (citing Doc. 16-1 at 1)).

Koch Foods provides a contemporaneous signed statement of Nell Wallace—Mann's supervisor and aunt—that describes the fight like this:

As I was leaving the Supervisor office I Saw TINA Morris AT her locker with a Hardies Bag in her hand. TINA was facing her Locker. Gina Came up And Blind Sided Tina and her head hit the Locker. Tina Turned and Swang her hand. Gina Continued hitting Tina like a Mad Person out of Control. Tina Put Gina in a Bear hug wrapping her arms around her. to stop the Swing of her Fist. AT That Time Gina pulled Tinas Pants down. Tina released Gina from the Bear hug And pulled her Pants back up her Bottom half of her Body was exposed.

Nell Wallace
5/20/21

(Doc. 14-2 at 19).

Koch Foods also provides Tina Morris's contemporaneous signed statement, which similarly states that Gina struck the first two blows to the back of Tina's head while Tina was facing her locker. (Doc. 14-2 at 16-17). Tina turned around and put Gina in a headlock to get her to stop. Gina then pulled Tina's pants down, and when Tina tried to pull them up, Gina started hitting her again. (Doc. 14-2 at 17). Finally, Gina slammed Tina's head into the locker, causing Tina to bleed. (Doc. 14-2 at 17).

Finally, Koch Foods presents Benefield's declaration. Benefield says that she relied on Wallace's statement—*i.e.*, the statement of Mann's aunt—to determine that Tina was the victim. (Doc. 14-2 at 19). Koch Foods thus fired Gina for her behavior and took no action against Tina. (Doc. 14-2 at 4).

Mann's sole evidence about the fight is a declaration that gives Mann's first-hand account. (Doc. 16-1). In it, Mann describes the altercation as a "vicious, physical fight" that happened because Gina was upset because of "the work place bullying that she had to endure from her assistant supervisor (*i.e.* her twin sister)." (Doc. 16-1 at 2). But Mann affirms her aunt's (Wallace's) account, saying: "I understand that the Company believes that my situation is different from that involving Tina and Gina because Gina beat Tina up. I do not believe it is fair to suggest that I should have to suffer a beating from the hands of an employee that I disciplined to keep my job." (Doc. 16-1 at 3). Mann also affirmed Wallace's account at her deposition when she testified that Gina threw the first punch; Gina was the "aggressor"; and, Gina was "hitting Tina like a wild person out of control." (Doc. 14-1 at 36).

2. *The Relationship*: Mann also claims in her declaration that "Tina broke the company rules by having a romantic relationship with her co-worker" and that the sisters got crossways because Tina's romantic partner loaned money to Gina, which Gina did not repay. (Doc. 16-1 at 2). Mann did not mention this relationship in her EEOC Charge, (doc. 14-1 at 114), or during her deposition, (doc. 14-1 at 1-55).

Koch Foods replies with a declaration from Mattox that its Fraternization Policy does not prohibit co-workers from dating; it only applies to supervisors or members of management who enter relationships with someone he or she "directly supervises or whose terms or conditions of employment he or she may influence." (Doc. 18-1 at 2-3).

Neither party identifies the alleged paramour nor his position at Koch Foods. Neither party offers evidence that the decisionmakers (Benefield and Mattox) knew about Tina's relationship with a co-worker. And neither party offers evidence that Mann engaged in a similar relationship with a co-worker.

### B. Comparator Analysis

Mann relies on this comparator evidence to create an inference of discrimination—*i.e.*, Mann (a black female) and Tina Morris (a white female) acted similarly but only Mann got demoted, so race must have played a role in the decision. (*See* Doc. 17 at ¶ 99 (citing Doc. 16-1 at 1)).

1. *Standard of review*: To create an inference of discrimination, a comparator should be "similarly situated in all material respects," *Lewis v. City of Union City*, 918 F.3d 1213, 1178, 1185 (11th Cir. 2019), meaning that the comparator:

- engaged in the same basic conduct (or misconduct) as the plaintiff, *see, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992) (holding that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination");
- was subject to the same employment policy, guideline, or rule as the plaintiff, *see, e.g.*, *Lathem v. Dep't of Child. And Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (holding that a plaintiff's proffered comparators were valid where all were subject to the same "workplace rules or policies"); and,
- shared the plaintiff's employment or disciplinary history, *see, e.g.*, *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292,

304 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators).

If Mann cannot show that she is similarly situated to Tina Morris in all material respects, then evidence about Morris does not raise an inference of race discrimination that would survive summary judgment. *See Lewis*, 918 F.3d at 1228-29 ("An employer is well within its rights to accord different treatment to employees who are differently situated in "material respects"—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories. Finally, the all-material-respects standard serves the interest of sound judicial administration by allowing for summary judgment in appropriate cases–namely, where the comparators are simply too dissimilar to permit a valid inference that invidious discrimination is afoot.").

2. *The fight*: Tina Morris defending herself against her sister's attack is not similar to Mann calling Burdette a "punk ass bitch" and "fat motherfucker." Both parties' evidence—including eyewitness accounts from Mann and her aunt (Wallace)—paints Tina Morris as the victim of Gina's attack, and any actions that Tina took (physical or verbal) stemmed from being hit in the head and ultimately slammed into a locker by her sister. There is no evidence that Burdette physically accosted Mann before she yelled at him. Therefore, evidence about the Morris sisters' fight cannot raise an inference that the decision makers removed Mann but not Morris as a supervisor assistant because of their race.

3. *The relationship*: Because Mann is the non-moving party, the court will assume that Tina Morris was engaged in a romantic relationship with an unnamed co-worker. But Mann offers no evidence that Morris supervised the unnamed person, so there is no evidence that Mann broke company policy. Nor does Mann offer evidence that the decisionmakers knew about the relationship. Nor does she offer evidence that she (Mann) was engaged in a similar relationship that the decision makers knew about. In short, Mann presents insufficient evidence to allow a jury to find that Mann and Tina Morris were engaged in violative relationships but only Mann was demoted, thus raising an inference of

race discrimination. Without that evidence, Tina Morris's alleged relationship is irrelevant to Mann's claim.

—

In sum, Mann fails to show that she is similarly-situated to Tina Morris in all material respects. So Mann's evidence about Morris fails to raise an adequate inference of race discrimination to survive summary judgment. Because Mann offers no other evidence that would allow a reasonable juror to find that the decisionmakers (Benefield and Mattox) considered Mann's race when they disqualified her from continuing as a supervisor assistant, Mann cannot prove her race discrimination claim under a single- or mixed-motive theory of discrimination.

## CONCLUSION

Because Mann fails to offer evidence that would allow a reasonable juror to find that Koch Foods engaged in race discrimination, the court **GRANTS** Koch Foods' Motion for Summary Judgment, (doc. 13). The court will enter a separate order consistent with this memorandum opinion that closes this case.

**DONE** and **ORDERED** on February 6, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE